<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JARED C. WOODWARD,

      Plaintiff,

v.

PRESSLER AND PRESSLER, LLP,

      Defendant.

Civ. No. 10-1325 (KM)

**O P I N I O N**

*Appearances by:*

KIMMEL & SILVERMAN, P.C.
By: Amy L. Bennecoff, Esq.
1930 E. Marlton Pike, Suite Q29
Cherry Hill, New Jersey 08003

 *Attorneys for Plaintiff*

PRESSLER AND PRESSLER, LLP
By: Mitchell L. Williamson, Esq.
7 Entin Road
Parsippany, New Jersey 07054

 *Attorneys for Defendant*

**<u>DEBEVOISE, Senior District Judge</u>**

  This matter arises out of Defendant Pressler and Pressler LLP's ("Pressler") attempt to collect a debt from Plaintiff Jared C. Woodward. On March 12, 2010, Mr. Woodward filed a Complaint asserting violations of the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. §

1692 et seq. and seeking declaratory judgment, actual damages, statutory damages, costs, and attorney's fees.

Pressler now moves for summary judgment on Mr. Woodward's claim under the FDCPA. In its motion papers, Pressler also seeks an award of attorney's fees from Mr. Woodward under the statute. Mr. Woodward opposes the motion. For the reasons set forth below, Pressler's Motion for Summary Judgment is GRANTED, but its claim for attorney's fees is DENIED.

## I.   BACKGROUND

Mr. Woodward is a detention officer in Spartanburg, South Carolina. Since October 2008, he has resided at 2479 Country Club Road, in Spartanburg ("the Spartanburg Address"), with his girlfriend, Karyn Neal.[1] In October 2005, he purchased a used Chevrolet Tahoe ("the Tahoe") from an automobile dealership in Green Brook, New Jersey. At that time, he resided at 86 Broomall Avenue, Edison, New Jersey 08817.

Mr. Woodward purchased the Tahoe with a loan from CitiFinancial Auto ("CitiFinancial"). In December 2006, Mr. Woodward became unable to continue making payments on the loan due to certain health issues that required immediate treatment. Consequently, according to Mr. Woodward, he reached an agreement with CitiFinancial under which CitiFinancial would repossess the Tahoe in exchange for satisfaction of any outstanding or future payments on the loan. CitiFinancial repossessed the Tahoe and Mr. Woodward was under the impression that his debt to CitiFinancial had been satisfied.

Indeed, the loan agreement between Mr. Woodward and CitiFinancial allows Mr. Woodward to surrender the Tahoe to CitiFinancial. CitiFinancial would then sell the Tahoe and

---

[1] Mr. Woodward and Ms. Neal cohabitated through September 2010. Ms. Neal no longer resides at the Spartanburg Address.

provide the proceeds to any outstanding debt. Mr. Woodward would then be required to satisfy any remaining balance if the proceeds from the sale fail to fully satisfy the debt.

In Late winter of 2007, CitiFinancial contacted Mr. Woodward and told him that, even with the proceeds from the sale of the Tahoe, he owed $17,000. Mr. Woodward disputed this amount and asked for an itemized statement of the balance. He received no further communications from CitiFinancial after this time.

On June 30, 2008, New Century Financial Services, Inc. ("New Century"), a distressed debt purchaser, acquired a portfolio of defaulted accounts from Sherman Acquisition, LLC ("Sherman"). That portfolio included an account in Mr. Woodward's name, stating that he owed CitiFinancial a principal of $14,790.81. On July 1, 2008, that account was referred to Pressler, who was serving as New Century's collections counsel, to initiate collection activities. The address provided by New Century for Mr. Woodward's account was 28 Woodedge Ave, Apartment 7, Edison, New Jersey 07828 ("the Edison Address"), where Mr. Woodward's father and stepmother resided.

On July 11, 2008, Pressler sent an initial notice letter to the Edison Address, stating, among other things, that (1) Mr. Woodward's account with CitiFinancial had been purchased by New Century and referred to Pressler for collection; (2) Mr. Woodward could pay his debt, in the amount of $12,821.79 and avoid any further action against him; (3) Mr. Woodward had thirty days to dispute the debt before it was deemed valid. See (McCabe Cert., Ex. A.) Pressler did not receive any response to this letter, nor was it returned as undeliverable.[2] Because the letter was

---

[2] Pressler also used an envelope stating "Address Service Requested", which would allow the letter to be forwarded to any new address known to the United States Postal Service and notify Pressler of any new address. Pressler did not received notification of (1) a new address; or (2) that the letter was unclaimed or unable to be forwarded to a new address.

3

not returned as undeliverable, Pressler assumed that the address provided by New Century for Mr. Woodward's account was valid for service of a subsequent summons and complaint.

According to Pressler's records, Pressler made telephone calls to Mr. Woodward on July 17, 2008, at 5:47pm; July 24, 2008, at 11:39am; August 1, 2008, at 12:54pm; and August 7, 2008, at 1:41pm; and August 18, 2008, at 6:03pm. On August 28, 2008, Pressler sent a letter to Mr. Woodward at the Edison Address offering to forgive the entire debt in exchange for 80% of the balance. See (McCabe Cert., Ex. B.) Pressler neither received a response to the letter, nor was it returned for any reason.

Pressler continued trying to get in touch with Mr. Woodward via telephone, on September 8, 2008, at 11:09am; September 15, 2008, at 4:47pm; and September 23, 2008, at 5:51pm. On October 1, 2008, Pressler filed a summons and complaint against Mr. Woodward, in New Jersey Superior Court, seeking judicial enforcement of the debt ("the State Court Action"). Pressler attempted to serve the summons and complaint on Mr. Woodward, on October 7, 2008. In doing so, Pressler had the documents delivered to the Edison Address, where Mr. Woodward's father and stepmother lived, and served specifically on Mr. Woodward's stepmother.

Pressler yet again attempted to contact Mr. Woodward via telephone, on October 8, 2008, at 4:13pm; October 21, 2008, at 6:27pm; November 10, 2008, at 5:20pm; November 28, at 9:15am; December 13, 2008, at 11:44am; December 22, 2008, at 5:34pm. On January 13, 2009, Judgment by Default was entered against Mr. Woodward for $13,412, because he had failed to respond to the complaint in the State Court Action. On January 22, 2009, at 10:17am, Pressler tried again to contact Mr. Woodward via telephone. On January 27, Pressler sent a letter, addressed to Mr. Woodward, at the Edison Address, notifying him of the default judgment, and

offering various payment options to satisfy the judgment. Pressler received no response to this letter.

On February 5, 2009, Pressler sent a letter to Mr. Woodward, at the Edison Address, notifying him that it was applying to the New Jersey Superior Court to garnish his wages in order to satisfy the default judgment. On March 25, 2009, that letter was returned to Pressler and marked unclaimed. Pressler then tried yet again to get in touch with Mr. Woodward, on November 21, 2009, at 10:17am; and November 27, 2009, at 11:51am.

According to Mr. Woodward, Pressler's calls "were usually automated, and when [he] answered, a representative would come on the phone, and attempted to coerce payment from [him]." (Woodward Aff. ¶ 7.) Moreover, Pressler's "representatives repeatedly threatened that failure to pay could result in loss of [his] job and/or imprisonment[.]" (Id. ¶ 8.) Mr. Woodward often ignored these calls. However, "when [he] did answer the telephone, [he] always disputed that [he] owed the alleged debt." (Id. ¶ 9.)

Mr. Woodward further maintains that he "received [Pressler's] telephone calls at all times of the day, including early in the morning and late at night[.]" (Id ¶ 10.) Additionally, they were "harassing and annoying." (Id. ¶ 11.) Although he did not maintain any record of Pressler's calls, he recalls receiving them "as often as twice per day and twenty times per month." (Id. ¶ 11.) He contends that he received many more telephone calls from Pressler than those noted in Pressler's records. Strangely, he also testified to receiving telephone calls from Pressler, as early as May 2007, before his debt had even been referred to Pressler for collection.

On December 7, 2009, a Writ of Execution against Goods and Chattles was issued to the New Jersey Superior Court for service of a levy on Mr. Woodward's account with Bank of America. On December 8, 2009, Pressler sent Mr. Woodward a letter to the Edison Address,

5

reminding him that the entire judgment against him remained unpaid. The letter was sent "Address Service Requested" and further stated that "[i]f you receive this letter, our address has been verified for service upon you of an Information Subpoena." (McCabe Aff., Ex. H.)

There was no response to the letter, and it was not returned. Consequently, on December 30, 2009, Pressler sent an Information Subpoena to Mr. Woodward, at the Edison Address, stating that a judgment had been entered against him and the full amount remained due. Pressler contends that, on January 8, 2010, it sent a Notice to Debtor to Mr. Woodward at the Edison Address.[3]

That same day, Bank of America sent a letter to Mr. Woodward at the Spartanburg Address, stating that it had received a New Jersey Superior Court Levy, on January 6, 2010, requiring the bank to debit funds from his account. Mr. Woodward received this letter at the Spartanburg Address.

On February 2, 2010, Pressler filed a Motion for Turnover of Funds, in New Jersey Superior Court, and sent a copy to Mr. Woodward at the Edison Address. On Febraury 18, 2010, the Information Subpoena that was sent to Mr. Woodward, on December 30, 2009, at the Edison Address, was returned to Pressler, marked "unclaimed-unable to forward." (McCabe Aff., Ex. L.) On February 24, 2010 the Hon. Melvin Gelade J.S.C. entered an Order for Turnover, because Mr. Woodward did not oppose Pressler's Motion for Turnover of Funds. Pressler received the order on March 4, 2010, and sent a copy of it to Mr. Woodward at the Edison Address the following day.

On March 5, 2010, the Notice of Motion for Turnover of funds that Pressler sent to Mr. Woodward at the Edison Address was returned to Pressler and marked as unclaimed, but not

---

[3] Pressler intended to attach a copy of the Notice to Debtor as Exhibit J to the McCabe Affidavit, but failed to do so. Instead, what is labeled as Exhibit J is a duplicate of Exhibit K.

undeliverable. On March 15, 2010, at 5:36pm, Pressler attempted to contact Mr. Woodward via telephone. On March 29, 2010, the Order of Turnover that Pressler previously sent to Mr. Woodward at the Edison Address was also returned as unclaimed, but not undeliverable.

Mr. Woodward maintains that he was never actually served by Pressler with any documents related to the State Court Action, and only received those documents from a third party in January or February 2010.[4] (Woodward Aff. ¶ 31.) Consequently, on April 7, 2010, Mr. Woodward filed a Motion to Vacate the Default Judgment entered against him in the State Court Action. On April 16, the New Jersey Superior Court entered an order setting aside the Default Judgment against Mr. Woodward. On May 11, 2010, Pressler filed a Motion for Reconsideration of that order. On June 25, 2010, the New Jersey Superior Court granted Pressler's Motion for Reconsideration and entered an order reinstating the Default Judgment against Mr. Woodward. Mr. Woodward subsequently filed a Motion for Reconsideration of the Court's June 25, 2010 order, which Pressler did not oppose. On August 23, 2010, the New Jersey Superior Court granted Mr. Woodward's Motion for Reconsideration and vacated the Court's June 25, 2010 order.

---

[4] The copy of Pressler's letter notifying Mr. Woodward of wage garnishment that is attached to the Complaint has a fax stamp, dated January 27, 2010, bearing the name Karyn Neal. See (Compl. Ex. A.) The copy of Pressler's letter reminding Mr. Woodward about the unpaid judgment against him that is attached to the Complaint has two fax stamps. The first, dated December 14, 2009, bears the name Jerome Woodward. See (Compl., Ex. B.) The second, dated January 27, 2010, bears the name Karyn Neal. See (id.) The copy of the Information Subpoena that is attached to the Complaint shows two fax stamps. The first, dated January 5, 2010, bears the name Jared Woodward. See (Compl., Ex. B.) The second, dated January 27, 2010, bears the name Karyn Neal. See (id.) The copy of the Motion for Turnover of Funds that it attached to the Complaint indicates two fax stamps. The first, dated February 2, 2010, bears the name Jerome Woodward. See (Compl., Ex. D.) The second, dated February 3, 2010, bears the name Karyn Neal. See (id.)

In February 2011, there was a three-day trial on the State Court Action, which resulted in judgment being entered in Mr. Woodward's favor, after a finding that Pressler failed to prove that Mr. Woodward owed any outstanding debt to CitiFinancial.

## II.   DISCUSSION

Pressler moves for summary judgment on Mr. Woodward's claims under the FDCPA, pursuant to Federal Rule of Civil Procedure 56(a). In doing so, Pressler argues that Mr. Woodward (1) sets forth only general statements regarding Pressler's telephone calls; (2) fails to provide any specific allegations of threats or misleading information from Pressler; (3) fails to set forth any examples of unfair practices committed by Pressler. Pressler further argues that (1) it complied with all of the FDCPA's requirements; and (2) Mr. Woodward's claims in this case have no basis in law or in fact, and were brought for the purpose of harassment, which entitles Pressler to an award of attorney's fees.

Mr. Woodward opposes the motion. In doing so, he argues that Pressler violated the FDCPA by bringing the State Court Action while knowing that it could not prove that Mr. Woodward owed an outstanding debt to CitiFinancial. Mr. Woodward also points to a number of factual issues to defeat summary judgment, including (1) whether Pressler sent documents related to the State Court Action to the Edison Address, knowing that Mr. Woodward did not reside there; (3) whether Pressler called Mr. Woodward excessively and at unusual times of day, and made threats to take action that Pressler could not legally take; and (4) whether Pressler sent Mr. Woodward written notice of his right to dispute the alleged debt. Finally, Mr. Woodward argues that Pressler is not entitled to attorney's fees because he did not file this action in bad faith or to harass.

**A.    Standard of Review**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

The party moving for summary judgment has the burden of showing that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, it may discharge its burden under the summary judgment standard by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding whether a dispute of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

B.     **Pressler's Motion for Summary Judgment**

Mr. Woodward claims that Pressler violated the FDCPA in the following ways: (1) communicating with Mr. Woodward regarding his alleged debt before 8:00am and after 9:00pm, in violation of 15 U.S.C. § 1692c(a)(1); (2) engaging in conduct the natural consequence of which is to harass, oppress, or abuse, in violation of 15 U.S.C. § 1692d; (3) engaging Mr. Woodward in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass, in violation of 15 U.S.C. § 1692d(5); (4) using false, deceptive, or misleading representations or means in connection with the collection of Mr. Woodward's debt, in violation of 15 U.S.C. § 1692e; (5) misrepresenting the amount of Mr. Woodward's debt, in violation of 15 U.S.C. § 1692e(2); (6) misrepresenting or implying that nonpayment of Mr. Woodward's debt would result in his arrest or imprisonment, or the seizure, garnishment, attachment, or sale of his property wages, in violation of 15 U.S.C. § 1692e(4); (7) threatening to take action that is not intended to be taken, in violation of 15 U.S.C. § 1692e(5); (8) using false representations or deceptive means to collect Mr. Woodward's debt, in violation of 15 U.S.C. § 1692e(10); (9) using unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f; (10) collecting amounts expressly not authorized in the agreement or permitted by law, in violation of 15 U.S.C. § 1692f(1); and (11) failing to send written notice of the alleged debt, in violation of 15 U.S.C. § 1692g(a).[5]

---

[5] Mr. Woodward sets forth no evidence whatsoever in support of his claims that Pressler (1) misrepresented the amount of Mr. Woodward's debt, in violation of 15 U.S.C. § 1692e(2); (2) used false, deceptive, or misleading representations or means in connection with the collection of Mr. Woodward's debt, in violation of 15 U.S.C. § 1692e; (3) used false representations or deceptive means to collect Mr. Woodward's debt, in violation of 15 U.S.C. § 1692e(10); (4) used unfair or unconscionable means to collect or attempt to collect any debt, in violation of 15 U.S.C. § 1692f; or (5) collected amounts expressly not authorized in the agreement or permitted by law, in violation of 15 U.S.C. § 1692f(1). Consequently, those claims are dismissed.

"Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." Jerman v. Carlisle, McNelli, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 576 (2010) (citation omitted). "The FDCPA also provides that "any debt collector who fails to comply with any provision of th[e][Act] with respect to any person is liable to such person." Id. at 578 (quoting 15 U.S.C. § 1692k(a)).

"The FDCPA is generally characterized as a strict liability statute because it imposes liability without proof of an intentional violation." Glover v. FDIC, 698 F.3d 139, 149 (3d Cir. 2012) (quotations omitted). However, the statute contains two exceptions to provisions imposing liability on debt collectors. First, section 1692k(c) provides that "[a] debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." Second, section 1692k(e) states that no liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the [Federal Trade] Commission."

    *i.*    *Communications at inconvenient times (before 8:00am and after 9:00pm)* (*15 U.S.C. § 1692c(a)(1)*)

15 U.S.C. § 1692c(a)(1) provides that a debt collector violated the FDCPA when it communicates with a consumer either (1) "at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer"; or (2) "[i]n the absence of knowledge of circumstances to the contrary . . . after 8:00pm or before 9:00am "local time at the consumer's location."

11

Mr. Woodward fails to set forth sufficient evidence suggesting that Pressler called him before 9:00am or after 8:00pm. In an affidavit, Mr. Woodward states that he "received [Pressler's] telephone calls at all times of the day, including early in the morning and late at night[.]" (Id 10.) This statement is far too vague to support an inference that Pressler called Mr. Woodward before 9:00am or after 8:00pm. Indeed, it does not specify a single time that Pressler called. In contrast, according to Pressler's records, none of the telephone calls to Mr. Woodward was made before 9:00am or after 8:00pm. Consequently, Mr. Woodward's claim under 15 U.S.C. § 1692c(a)(1) is dismissed.

>  ii.   ***Engaging in conduct the natural consequence of which is to harass, oppress, or abuse (15 U.S.C. § 1692d)***

15 U.S.C. § 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Mr. Woodward claims that Pressler violated this provision by (1) filing the State Court Action with knowledge that Pressler could not prove that Mr. Woodward owed a debt to CitiFinancial; and (2) serving documents related to the State Court Action at Mr. Woodward's father's house with knowledge that Mr. Woodward did not reside there.

To support his claim that Pressler filed and pursued the State Court Action while knowing that it could not prove that he owed a debt, Mr. Woodward points to evidence that (1) his contract provided for surrender of the Tahoe; (2) he believed that surrendering the Tahoe would satisfy the debt in its entirety; and (3) he, at several points, disputed the debt alleged by CitiFinancial and Pressler. While this evidence indicates that Mr. Woodward believed that he did not owe any debt to CitiFinancial, it in no way suggests that Pressler knew that it had no

proof of such debt.[6] Therefore, a reasonable jury could not find that Pressler filed and pursued the State Court Action with knowledge that it could not prove Mr. Woodward's debt to CitiFinancial.

Similarly, there is no evidence from which a jury could reasonably infer that Pressler served documents related to the State Court Action at the Edison Address with knowledge that Mr. Woodward, in fact, did not reside at that address.  While there is no dispute that Pressler served Mr. Woodward at the incorrect address, there is nothing in the record suggesting that Pressler, at the time, knew that the Edison Address was incorrect.  It is undisputed that the Edison Address was the address originally provided to Pressler on Mr. Woodward's account, and the address that Mr. Woodward provided to CitiFinancial at the time he surrendered the Tahoe.  Moreover, not a single item that Pressler sent to the Edison Address was returned as undeliverable, and Pressler never received a forwarding address when anything was returned as unclaimed.

Mr. Woodward points out that Bank of America sent a letter to the Spartanburg Address—his correct address—to notify him of the levy on his bank account.  But this does not suggest that Pressler knew the address associated with that account.  Notably, the order for turnover of Mr. Woodward's funds was issued to a Bank of America Address in New Brunswick, New Jersey, not South Carolina, see (McCable Aff., Ex. M), indicating that Pressler had no knowledge of the Spartanburg Address.[7]  Consequently, Mr. Woodward's claims under 15 U.S.C. § 1692d are dismissed.

---

[6] Moreover, there is evidence suggesting that the proceeds from the sale of the Tahoe did not fully offset Mr. Woodward's debt and that CitiFinancial was seeking the balance.

[7] In his opposition brief, Mr. Woodward contends that Pressler "utilizes a sophisticated skip tracing system to track the location of alleged debtors," and "nevertheless served [Mr. Woodward] at an incorrect address." (Pl.'s Br. Summ. J., 10.)  However, there is nothing in the

> ### iii. Engaging Mr. Woodward in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass (15 U.S.C. § 1692d(5))

15 U.S.C. § 1692d(5) states that it is a violation of the FDCPA to place telephone calls "repeatedly or continuously with intent to annoy, abuse, or harass . . ." Mr. Woodward claims that Pressler violated this provision by placing excessive and harassing telephone calls to him regarding his alleged debt. The only piece of evidence in support of this claim is Mr. Woodward's affidavit stating that (1) he "received [Pressler's] telephone calls at all times of the day, including early in the morning and late at night" (Woodward Aff. ¶ 10); (2) these calls were "harassing and annoying" (id. ¶ 11); and (3) he recalls receiving them "as often as twice per day and twenty times per month" (id.).

This evidence is simply too vague to support Mr. Woodward's claim. It is largely conclusory and provides no specific facts from which to infer that Pressler made excessive telephone calls with the intent to annoy or harass Mr. Woodward. See Gonzalez v. Sec'y of Dep't of Homeland Sec., 678 F.3d 254, 263 (3d Cir. 2012) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment." (quotations omitted)). In contrast, Pressler's records show that (1) from 2008 through 2010, Pressler placed eighteen telephone calls to Mr. Woodward's cell phone; (2) these calls were never made more than three times per month; and (3) Pressler did not call Mr. Woodward more often than once every six days. [8] See (Ritz Aff., Ex. A.) Thus, a reasonable jury could not find that the frequency of Pressler's telephone calls to Mr. Woodward is excessive or indicates any intent to

---

record indicating that Pressler generally uses a skip tracing system or that it used a skip tracking system to locate Mr. Woodward.

[8] Although not dispositive, it is notable that Mr. Woodward fails to submit any of his cell phone records to support his claim.

14

harass or annoy. Consequently, Mr. Woodward's claim under 15 U.S.C. § 1692d(5) is dismissed.

### iv. *Misrepresenting or implying that nonpayment of Mr. Woodward's debt would result in his arrest or imprisonment, or the seizure, garnishment, attachment, or sale of his property wages (15 U.S.C. § 1692e(4)), and threatening to take action that is not intended to be taken (15 U.S.C. § 1692e(5))*

It is unlawful under the FDCPA for a debt collector to represent or imply "that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(4). It is also unlawful for a debt collector to threaten "to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).

Mr. Woodward claims that Pressler violated both of these provisions. In doing so, he points to his affidavit where he states that "representatives repeatedly threatened that failure to pay could result in loss of [his] job and/or imprisonment[.]" (Woodward Aff. ¶ 8.) This evidence is conclusory, self-serving, and provides no specific facts from which a reasonably jury could infer a violation of 15 U.S.C. § 1692e(4) or 15 U.S.C. § 1692e(5). See Gonzalez, 678 F.3d at 263. Consequently, Mr. Woodward's claims under those provisions are dismissed.

### v. *Failure to Send Written Notice (15 U.S.C. § 1692g(a))*

15 U.S.C. § 1692g(a) provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt

15

will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

It is undisputed that the content of Pressler's July 11, 2008 letter complies with this provision. However, Mr. Woodward contends that Pressler failed, as a matter of law, to send written notice of his ability to dispute the debt because he never received that letter.

"Section 1692g(a) does not require that a . . . Debt Notice must be received by a debtor. Instead, the plain language states that such a Notice need only be sent to a debtor." Mahon v. Credit Bureau of Placer County Inc., 171 F.3d 1197, 1201 (9th Cir. 1999). Generally, a letter that was properly addressed and deposited at a post office creates a rebuttable presumption that the letter was received by the addressee. See Rosenthal v. Walker, 111 U.S. 185, 193 (1884); Godfrey v. United States, 997 F.2d 335, 338 (7th Cir. 1993). And "mere denial of receipt does not rebut that presumption. There must be—in addition to denial of receipt—some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable." Meckel v. Continental Resources Co., 758 F.2d 811, 817 (2d Cir. 1985).

Here, Pressler provides evidence that it properly sent the July 11, 2008 letter to Mr. Woodward at the Edison Address, and Mr. Woodward does not dispute that the Edison Address

was a proper mailing address at that time.[9] This creates a presumption that Mr. Woodward received Pressler's July 11, 2008 letter. Mr. Woodward fails to rebut this presumption. He merely states that he did not receive that letter and provides no evidence of carelessness or deviation from a standard practice. Consequently, Mr. Woodward's claim under 15 U.S.C. § 1692g(a) is dismissed.

C. **Pressler's Claim for Attorney's Fees**

15 U.S.C. § 1692k(a)(3) provides that, "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."

Pressler contends that it is entitled to attorney's fees because Mr. Woodward (1) failed to provide any factual basis for his claims; and (2) took no action to modify his claims after being presented with Pressler's records of telephone calls made to Mr. Woodward regarding his alleged debt. This contention is unpersuasive. While Mr. Woodward failed to produce sufficient evidence from which one could reasonably infer that Pressler violated the FDCPA, there is nothing suggesting that he brought this action in bad faith or to harass Pressler. Mr. Woodward presents evidence (1) calling into question whether he owed any outstanding debt to CitiFinancial; (2) that Pressler failed to properly serve him in the State Court Action; and (3) that Pressler failed to prove that he owed a debt in the State Court Action, all of which suggests that Mr. Woodward maintained a good faith belief that Pressler had acted unfairly in pursuing any debt from him on behalf of CitiFinancial. Thus, Pressler's claim for attorney's fees under the FDCPA is denied.

### III. CONCLUSION

---

[9] Mr. Woodward took up residence at the Spartanburg beginning in October 2008.

For the foregoing reasons, Pressler's Motion for Summary Judgment is GRANTED, but its claim for attorney's fees is DENIED.  Mr. Woodward's Complaint is dismissed, in its entirety, with prejudice.

The Court will enter an order implementing this opinion.


         /s/ **Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated: February 28, 2014